UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LORI P. PEPPERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-0157-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Lori P. Peppers seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

**I.   Statement of the Case**

Peppers suffers from Human Immunodeficiency Virus (HIV) and chronic depression. (Tr. 43, 147, 306.) During the administrative proceedings Peppers attempted suicide and was hospitalized at a psychiatric hospital for evaluation and stabilization for several days following the suicide attempt. (Tr. 261, 283-85.)

The Administrative Law Judge (ALJ) acknowledged Peppers' suicide attempt and diagnoses of adjustment disorder; major depressive disorder, recurrent; and a history of cocaine dependence but determined that her mental impairments were not severe. (Tr. 12-13, 15.) He then determined at the fourth step of the sequential disability evaluation process[1] that Peppers retained the residual functional capacity to perform sedentary work and that she could perform her past work as a receptionist. (Tr. 16.)

Peppers contends that the ALJ erred in evaluating her mental impairments and that he should have obtained additional medical evidence regarding her mental impairments.

## II.  Discussion

At the initial and reconsideration levels it was determined that neither Peppers' primary diagnosis of HIV or her secondary diagnosis of major depressive disorder rendered her disabled. (Tr. 43.) These determinations were based in part on a review completed by Robert M. Gilliland, M.D., a physician designated by the Texas Rehabilitation Commission Disability Determination Service (DDS) to review Peppers' psychiatric condition, and a report submitted by Addison E. Gradel, Ed.D., a psychologist designated by the DDS to examine Peppers. (Tr. 302-05, 315-29.)

Dr. Gradel examined Peppers on July 23, 2003, and determined that she suffered from major depressive disorder, recurrent, in partial remission and a history of cocaine

---

[1] In order to determine whether a claimant is disabled, the Commissioner considers the claimant's claim under a five-step sequential evaluation process. 20 C.F.R. § 404.1520 (2005); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential inquiry, the hearing officer decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix I of the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. *Id*.

dependence; he assigned her a Global Assessment of Functioning (GAF) score of 45. (Tr. 304.)

On October 14, 2003, Dr Gilliland reviewed Peppers' medical records and noted on a Psychiatric Review Technique Form (PRTF) that Dr. Gradel's report did not include information regarding Peppers' activities of daily living and that Peppers had not supplied such information. (Tr. 327.) Dr. Gilliland left blank all portions of the PTRF except for the first page on which he noted the types of medical disorders on which Peppers' claim was based and the last page on which he noted in part that there was insufficient evidence in the record. (Tr. 315-329.) He did not complete sections related to the extent to which Peppers' mental impairments might impact her mood and energy (Tr. 318, 320, 322) or the section related to the functional limitations her impairments might impose (Tr. 325).

The ALJ acknowledged that DDS physicians found "insufficient evidence to determine [Peppers'] mental impairments" but stated that because the record contained "new and material evidence such as [Peppers'] testimony," he would not accord significant probative weight to the opinions provided by DDS physicians. (Tr. 15.) Citing 20 C.F.R. § 416.920a, the ALJ determined that Peppers' mental impairment resulted in slight restriction of activities of daily living, slight difficulties in maintaining social functioning, and slight limitations or deficiencies in concentration, persistence, or pace. (Tr. 15.)

The regulation the ALJ cited in his decision provides that the Commissioner must determine the degree to which the claimant's mental impairments impose functional limitations. 20 C.F.R. § 416.920a(c)(2) (2005). Specifically, examiners for the Social

3

Security Administration must determine the degree of limitation in four functional areas including: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). Examiners at the initial and reconsideration levels must document their determinations on a standardized form and the ALJ must document his determinations within his decision. 20 C.F.R. § 416.920a(e).

In this case, Dr. Gilliland, the physician responsible for documenting the determinations at the reconsideration level, did not document the degree of limitation Peppers' mental impairments had in any of the four functional areas as required under § 416.920a. (Tr. 315-27.) In fact, he stated that the record did not contain sufficient information for him to make the determinations. (Tr. 327.) The ALJ declined to adopt Dr. Gilliland's opinion on grounds that he believed the record contained new and material evidence that showed that Peppers' mental impairments caused only slight restrictions in the first three areas set forth under 20 C.F.R. § 416.920a(c)(3).[2] (Tr. 15.) Under the regulations, the ALJ was permitted to reject Dr. Gilliland's opinion. 20 C.F.R. § 416.927(f). And the ALJ did so because he believed that the record contained "new and material evidence such as the testimony of the claimant." (Tr. 15.) It is unclear, however, to what evidence the ALJ referred. Peppers indicated in her testimony that her depression caused her to feel lethargic

---

[2] Although the ALJ acknowledged Peppers' suicide attempt, in regard to the functional limitations caused by Peppers' mental impairments, he did not address the fourth functional area under § 416.920a(c)(3), episodes of decompensation. (Tr. 14-15.)

and that it sometimes affected her appetite and sleep patterns. (Tr. 38-39.) She testified that she attended a support group once a week when she was not sick and that she had not had suicidal thoughts since her suicide attempt until she was told the day before the hearing that in addition to being HIV positive, she had hepatitis B and hepatitis C. (Tr. 39.)

Although Peppers' testimony may have addressed the extent to which her depression affected her energy levels, appetite, and sleep patterns, it did not address the extent to which her depression may have affected other activities of daily living, and her ability to attend a once weekly support group does not speak to whether she was limited in her ability to interact socially in general; i.e, with persons who did not share her HIV-positive status. Peppers' testimony did not address her limitations in concentration, persistence, and pace, and her testimony that she felt suicidal the day she learned she had hepatitis B and hepatitis C calls into question whether she might experience future episodes of decompensation connected to or motivated by her feelings regarding the status of her health.

In this case, because of the lack of medical evidence in the record regarding the functional limitations caused by Peppers' mental impairments, the ALJ should have re-contacted Dr. Gradel for additional information. The regulations state that when a report from a consultative examination fails to provide evidence with which to make a decision in regard to the impairment at issue, the Commissioner will contact the medical source for further information. 20 C.F.R. § 416.919p.

Given that Dr. Gilliland believed that there was insufficient evidence in the record to determine the functional limitations caused by Peppers' mental impairments and given the

5

lack of evidence in the record that would provide a medical basis for the ALJ's determinations regarding the same, the court must find that the ALJ's determinations as to Peppers' mental impairments is not supported by substantial evidence.

Remand is appropriate when it is determined that the Commissioner's decision is not supported by substantial evidence or when it is determined that the evidence was not evaluated under proper legal standards. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson, v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

Because remand is required for further analysis of Peppers' mental impairments, on remand it should also be determined whether Peppers is capable of maintaining employment on a continuing basis. Although an ALJ is not required to make a specific finding regarding the claimant's ability to maintain employment in every case, such a finding is required when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

The records show that Peppers' veins were inaccessible and therefore she had a port inserted in her skin through which she could receive medications intravenously. The records also indicate that Peppers underwent several hospitalizations in 2004 and that some were related to infections in the port but that she experienced other infections and symptoms unrelated to the port. Peppers underwent surgery to move the port in the spring of 2004.

(Tr. 277, 386.).  Thereafter, on May 4, 2004, it was determined that there was infection at the site of the port, Peppers was hospitalized for eight days for intravenous fluid administration, antibiotic treatment, and monitoring.  (Tr. 374-76.)  Seven days after she was released from the hospital, on May 18, 2004, Peppers was examined in the hospital emergency room for symptoms including fever, nausea, and vomiting.  (Tr. 373.)  On the following day, Peppers was hospitalized again for an infection and released seven days later.  (Tr. 378-79.)  Less than three weeks later Peppers was treated at the hospital emergency room with a temperature of 102.6 degrees and was again admitted to the hospital for four days.  (Tr. 360, 364.)  Among the diagnoses at discharge were: adverse reaction to antibiotics; HIV; thrush; bilateral ear infections; anxiety; mild diastolic heart failure; and diarrhea.  (Tr. 364.)  Peppers' primary physician completed a form on June 15, 2004, and stated in part that Peppers was undergoing home intravenous treatment with a home health care provider for a blood infection, that she had "multiple medical problems requiring close attention," and that she was unable to fulfill job requirements.  (Tr. 331.)

Given the frequent hospitalizations that Peppers underwent in 2004 and the opinion of her treating physician, further development of the record is needed to determine whether Peppers is capable of maintaining employment.  *See Watson*, 288 F.3d at 217-18.

### III.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Peppers' case for further administrative proceedings.

## IV. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: March 22, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge